AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of Kansas

*FILED*
*U.S. District Court*
*District of Kansas*

*OCT 11 2017*

*Clerk U.S. District Court*
*By:_____ Deputy Clerk*

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| THE GOOGLE EMAIL ACCOUNT OF USER NAME: | ) |
| BIGGC2300@GMAIL.COM | ) |
| MAINTAINED, CONTROLLED, OR OPERATED BY GOOGLE. | ) |
| | ) |

Case No.17- M - 6145 -01- KGG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Northern_____ District of _____California_____ *(identify the person or describe property to be searched and give its location)*:

> See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

> See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ____18____ U.S.C. § ____1591____ , and the application is based on these facts:

- ☑ Continued on the attached sheet. (see attached affidavit of probable cause)
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Cameron M. Heath, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __Oct 11, 2017__

_____
*Judge's signature*

City and state: Wichita, KS

Kenneth G. Gale, United States Magistrate Judge
*Printed name and title*



UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
**Biggc2300@GMAIL.COM**
THAT ARE STORED AT PREMISES
OWNED, MAINTAINED, CONTROLLED, OR
OPERATED BY GOOGLE INC.,
AN E-MAIL PROVIDER HEADQUARTERED
AT 1600 AMPHITHEATRE PARKWAY
MOUNTAIN VIEW, CA  94043

Case No. 17- m - 6145 - 01 - KGG

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Cameron M. Heath, Jr., Special Agent of the Federal Bureau of Investigation, Wichita,

Kansas, being duly sworn, state the following:

### INTRODUCTION AND AGENT BACKGROUND

1)      I am employed as a Special Agent with the Federal Bureau of Investigation (FBI). I have

been employed as a Special Agent since September, 2015. I am currently assigned to the

Wichita, Kansas, Resident Agency, Kansas City Division. Prior to service with the FBI, I

was a State Police Officer for the State of Missouri. As a Special Agent of the FBI, I am

authorized to investigate violations of laws of the United States, and I am a law

enforcement officer with authority to execute arrest, search, and seizure warrants under the

authority of the United States. I have participated in a wide variety of criminal

investigations, to include crimes against children, child exploitation, bank robbery, drug

violations, white collar crimes, and other violent and non-violent Federal crimes.

Additionally, I have participated in the preparation and/or execution of many searches and arrests.

2)    As a Federal Agent, your affiant is authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3)    This Affidavit is in support of an application for a search warrant for information associated with a certain GOOGLE E-Mail account that is stored at premises owned, maintained, controlled, or operated by GOOGLE INC (GOOGLE). GOOGLE is an electronic communications service provider for email accounts, and is headquartered at 1600 Amphitheatre Parkway Mountain View, CA 94043, and they maintain these accounts on their servers. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703 (c)(1)(A) to require GOOGLE to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the GOOGLE account. The information to be disclosed by GOOGLE is described in Attachment A, which will be searched by law enforcement for the information described in Attachment B.

4)    Based upon the information contained in this Affidavit, I have reason to believe that on said GOOGLE account there is now located evidence of violation(s) of 18 U.S.C. § 1591, relating to the Sex Trafficking of a Minor.

5)    The information in this Affidavit is information known to me as a result of my participation in this investigation or is information that has been communicated to me by other law enforcement investigators and witnesses, involved in this investigation. Since this Affidavit is being submitted for the limited purpose of supporting a search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set

forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violation of 18 U.S.C. § 1591, are presently located in the said GOOGLE account.

## PROBABLE CAUSE

6)  On or about June 27, 2017, Officer Kent Bauman, of the Wichita Police Department (WPD), and Anne Ellis, Child Protection Specialist, of the Kansas Department for Children and Families, interviewed MINOR VICTIM, a then 16 year old white female (born in June 2001), at the Wichita Children's Home.

7)  Based on disclosures made by MINOR VICTIM relating to sex trafficking, it was determined that MINOR VICTIM should be interviewed by Detectives Brent Huhman and Latavia Klumpp, both of the WPD Exploited Missing Child Unit (EMCU).

8)  On June 29, 2017, Detectives Huhman and Klumpp interviewed MINOR VICTIM at the WPD EMCU, who told them the following.

### Minor Victim's Interview

9)  In September of 2016, MINOR VICTIM (15 at the time) was walking with a friend in the southeast part of Wichita, KS. She was approached by a black male, identified as JOHNELL CARTER, also known as "Gotti."

10)  CARTER and MINOR VICTIM exchanged contact information with one another, and CARTER began communicating with MINOR VICTIM via FACEBOOK and SNAPCHAT.

11)  From September 2016 through June, 2017, MINOR VICTIM and CARTER met several times in person, and engaged in sexual intercourse twice.

12) At an unknown time in January 2017, CARTER drove MINOR VICTIM to meet two females at a hotel located on East Kellogg in Wichita. The two females informed MINOR VICTIM about prostitution and how BACKPAGE worked.[1]

13) Prior to leaving the hotel located on East Kellogg in Wichita, CARTER told MINOR VICTIM that he had created an advertisement of her on BACKPAGE. CARTER then told MINOR VICTIM that she had a pending date to which CARTER needed to take MINOR VICTIM.

14) CARTER drove MINOR VICTIM to a house near Murdock Street and Edgemoor Street, in Wichita. Upon arriving at the house, CARTER gave MINOR VICTIM a condom. CARTER told MINOR VICTIM to go inside the house and do whatever the man wanted, obtain money from him, and call CARTER when she was finished having sex.

15) MINOR VICTIM complied with CARTER'S instruction. MINOR VICTIM went to the front door, contacted an unknown black male, whom she described to be in his twenties. The man walked MINOR VICTIM through the house and told her to stay quiet because it was not his house. He took MINOR VICTIM into a bedroom where they had sexual intercourse. He paid MINOR VICTIM $100 for the sex. MINOR VICTIM contacted CARTER and told CARTER that she was done.

16) CARTER told MINOR VICTIM to meet him outside the house, but down the street from where she was. A short time later, CARTER picked MINOR VICTIM up. MINOR VICTIM told CARTER the man paid her $100, at which point she gave CARTER the money. CARTER kept approximately $60 and gave MINOR VICTIM the rest.

---

[1] BACKPAGE is an on-line classified advertisement company headquartered in Dallas, Texas.

17) A few weeks after MINOR VICTIM'S first "date," CARTER took MINOR VICTIM to the Motel 6, located at 5736 West Kellogg in Wichita, KS.

18) At the Motel 6, MINOR VICTIM was introduced to "Jazzy, Izzy, and Bella," who were instructed by CARTER to further educate MINOR VICTIM on how to sell herself for money.

19) In the following weeks after meeting "Jazzy, Izzy, and Bella," MINOR VICTIM and CARTER continued communicating via FACEBOOK. Utilizing FACEBOOK, CARTER and MINOR VICTIM would communicate with one another in determining when and where their future meets would be, and CARTER continued discussing prostitution with her.

20) In March of 2017, JAZMIN MANUEL, CARTER'S on-again-off-again girlfriend, contacted MINOR VICTIM via FACEBOOK. MANUEL knew MINOR VICTIM through CARTER, as MINOR VICTIM and CARTER were "friends" on FACEBOOK. MANUEL requested MINOR VICTIM to go with her to the San Antonio, Texas area. MANUEL'S brother "TK" was purportedly stranded in the San Antonio, Texas area, and MANUEL needed MINOR VICTIM'S help in getting TK back to Wichita.

21) MANUEL'S plan was that she and MINOR VICTIM would have sex with men in Wichita to pay for the trip to San Antonio. MINOR VICTIM complied with MANUEL'S request.

22) On approximately March 19, 2017, MANUEL posted advertisements of herself and MINOR VICTIM onto the Wichita BACKPAGE. As a result, MINOR VICTIM had sex with men in Wichita, followed by MANUEL driving MINOR VICTIM to Texas. Prior to arriving in the San Antonio, TX area, MANUEL posted advertisements of her and MINOR

VICTIM onto the San Antonio BACKPAGE. Upon arrival to the San Antonio area, MINOR VICTIM had sex with additional men for money.

23) On March 21, 2017 a run-a-way report was initiated by MINOR VICTIM's mother, K.L. WPD Officer T. Newell took the report from K.L., at which point Officer Newell made contact with MANUEL via a phone call. MANUEL told Officer Newell that they were in the Dallas, TX area and were on their way back to Wichita. MANUEL told Officer Newell that she would take MINOR VICTIM back to her mother's house, upon arrival into Wichita.

24) During MINOR VICTIM and MANUEL's trip back to Wichita, MANUEL told MINOR VICTIM to erase her phone because MANUEL thought there would be cops at K.L.'s house when they got back to Wichita. Upon arrival to Wichita, MANUEL dropped MINOR VICTIM off at a Walgreens near her mother's house.

25) While walking home from the Walgreens, CARTER called MINOR VICTIM and asked where MINOR VICTIM was. CARTER told MINOR VICTIM he wanted to meet her and talk to her. A few blocks from MINOR VICTIM's house, CARTER picked MINOR VICTIM up in a car and drove her to nearby apartments which were abandoned.

26) During their conversation, CARTER told MINOR VICTIM that he knew MINOR VICTIM went to Texas with MANUEL. CARTER was not happy that MINOR VICTIM had been working for MANUEL, at which point CARTER told MINOR VICTIM that if he found out that MINOR VICTIM was making money for MANUEL again, CARTER and MINOR VICTIM would have problems.

27) On an unknown date in April of 2017, CARTER contacted MINOR VICTIM and told MINOR VICTIM he wanted to see her. CARTER sent a friend to pick MINOR VICTIM

up because CARTER did not want to be out driving late because of his warrants. CARTER'S friend dropped MINOR VICTIM off at a house in southeast Wichita.

28) MINOR VICTIM and CARTER were the only people at the house. CARTER and MINOR VICTIM had sexual intercourse. After having sex, CARTER put his hands on MINOR VICTIM's neck and choked her, in addition to pulling MINOR VICTIM'S hair. CARTER told MINOR VICTIM that he heard MINOR VICTIM had been with MANUEL again. MINOR VICTIM told CARTER that was not true, but MINOR VICTIM did not resist CARTER because she did not know what to do. CARTER told MINOR VICTIM that he was not afraid to beat MINOR VICTIM like he had previously beaten MANUEL.

29) A few days before June 6, 2017, CARTER called MINOR VICTIM and asked why MINOR VICTIM had not been calling him. CARTER then told MINOR VICTIM that he would give MINOR VICTIM his current address if she would come over and see him. MINOR VICTIM declined the offer because of how bad CARTER had scared her the last time she had saw CARTER.

30) From January 2017 through the end of March 2017, MINOR VICTIM went on approximately seven dates, where she was paid for sex, as a result of either CARTER or MANUEL advertising her on BACKPAGE.

**Identification of Manuel and Carter**

31) At the conclusion of the interview, Detective Huhman provided MINOR VICTIM a photo lineup of six black females. Detective Huhman asked MINOR VICTIM if she recognized any of the photographs and MINOR VICTIM indicated she did. MINOR VICTIM pointed out MANUEL and indicated that the photograph of MANUEL was the same individual who recruited MINOR VICTIM via FACEBOOK to commit sex acts, and was the same

individual who transported her from Wichita, KS to the San Antonio, TX area where she committed sex acts for money.

32)     On July 10, 2017, Detective Huhman had made additional contact with MINOR VICTIM. Detective Huhman provided MINOR VICTIM of a photo lineup of six black males. Detective Huhman asked MINOR VICTIM if she recognized any of the photographs and MINOR VICTIM indicated she did. MINOR VICTIM pointed out CARTER and indicated that the photograph of CARTER was the same individual who had recruited her via FACEBOOK to commit sex acts, and who had transported her to a residence in Wichita, KS to commit sex acts, as a result of an advertisement on BACKPAGE.

33)     Detective Huhman had gained consent from MINOR VICTIM to search through her FACEBOOK account, at which point Detective Huhman saw that MINOR VICTIM was FACEBOOK friends with CARTER and MANUEL.

**Facebook search warrants**

34)     On July 12, 2017, Detective Huhman submitted a search warrant to FACEBOOK, for the accounts of MANUEL and CARTER. The search warrant was through the Sedgwick County, KS District Court.

35)     On July 17, 2017, Detective Huhman received the results from the search warrant sent to FACEBOOK. The results to CARTER'S FACEBOOK account indicated CARTER had communication with another individual relating to CARTER's sex trafficking activities. Those communications were with the user of FACEBOOK UserID "christian.dixon.5876", believed to be an account operated by CHRISTIAN DIXON.

36)     Messages found within CARTER's account indicated both CARTER and DIXON were involved in pimping MINOR VICTIM. It was found that CARTER had sent several

indecent photos of MINOR VICTIM to DIXON utilizing FACEBOOK. CARTER told DIXON the photos were of "V," and later described MINOR VICTIM as "Lil bitch bad G." Later in the exchange, DIXON, referring to MINOR VICTIM, stated "I don't think she goes to work today tho."

### Backpage advertisements and Gmail connection

37)   During the course of the investigation, Detective Huhman identified three BACKPAGE advertisements which included an associated email account of "biggc2300@gmail.com" (**TARGET ACCOUNT**) an email account operated through GOOGLE.

38)   On July 14, 2017, Detective Huhman issued GOOGLE a subpoena in regards to the "biggc2300@gmail.com" account. The purpose of the subpoena was to determine the subscriber information for the "biggc2300@gmail.com" account owner.

39)   On August 28, 2017, Detective Huhman received the results from the aforementioned GOOGLE subpoena. The results from the GOOGLE subpoena indicated that CHRIS DIXON was the subscriber of the "biggc2300@gmail.com account."

40)   Based on DIXON's involvement with the advertising of MINOR VICTIM for sex trafficking, as well as his communications with CARTER via FACEBOOK, it is believed that CHRISTIAN DIXON's GOOGLE email account will contain additional evidence associated with violations of 18 U.S.C. § 1591.

### BACKGROUND RELATING TO ELECTRONIC COMMUNICATIONS SERVICE PROVIDERS

41)   Because this investigation relates to the use of an email account to facilitate the crimes being investigated, I am providing the following background information associated with email accounts, which is based on my training and experience:

a)   Email is a popular form of transmitting messages and/or files in an electronic environment between computer users. When an individual computer user sends email, it is initiated at the user's computer, transmitted to the subscriber's mail server, then transmitted to its final destination.  A server is a computer that is attached to a dedicated network and serves many users.  An email server may allow users to post and read messages and to communicate via electronic means.

b)   One such service is Gmail, a service offered by GOOGLE, Inc.  This email service is available free of charge.  Subscribers obtain an account by registering on the Internet with Gmail. Gmail asks subscribers to provide basic information, such as name, gender, zip code, and other personal/biographical information.  However, Gmail does not verify the information provided.

c)   Gmail maintains electronic records pertaining to the individuals and companies for which they maintain subscriber accounts. These records include account access information, email transaction information, and account application information.

d)   Subscribers to Gmail may access their accounts on servers maintained and/or owned by Gmail from any computer connected to the Internet located anywhere in the world.

e)   Any email that is sent to a Gmail subscriber is stored in the subscriber's "mailbox" on Gmail's servers until the subscriber deletes the email or the subscriber's mailbox exceeds the storage limits preset by Gmail.  If the message is not deleted by the subscriber, the account is below the maximum limit, and the subscriber accesses the account periodically, that message can remain on the Gmail server indefinitely.

f)   Gmail users also have the option of saving a copy of the email that the user sends. Unless the sender of the email specifically deletes the email from the Gmail server, the email can remain on the system indefinitely. The sender can delete the stored email message, thereby eliminating it from the email box maintained at Gmail, but that message will remain in the recipient's email box unless the recipient deletes it as well or unless the recipient's account is subject to account size limitations.

g)   A Gmail subscriber can store files, including emails and image files, on servers maintained and/or owned by Gmail.  Emails and image files stored on a Gmail server by a subscriber may not necessarily be located in the subscriber's home computer. The subscriber may store emails and/or other files on the Gmail server for which there is insufficient storage space in the subscriber's computer and/or which he does not wish to maintain in the computer in his residence. Therefore, a search of the files in the computer in the subscriber's residence will not necessarily uncover the files that the subscriber has stored on the Gmail server.

42)   Generally, when served with a search warrant for electronic communications, the electronic communications service provider (ECSP), such as GOOGLE, will send the contents of the

specified account(s) to the investigation agency, usually on a CD, DVD or via email, for the investigator to review.

43) The ECSP can copy the contents of the account because that is within their expertise. Though the ECSP affirms that the records relate to the specified email account, the provider does not and will not undertake the examination of the contents of an account to make a determination as to what is relevant or irrelevant to the investigation.

44) Generally, and in this case particularly, the ECSP is not familiar with the investigation and is not in a position to identify the victim(s) or subject(s) of the investigation. The ECSP is neither qualified nor trained to search the account information as would a law enforcement officer. Only a trained agent, familiar with the statutory violations and facts of the case, can determine what items should be or should not be seized. For these reasons, your Affiant requests the provider disclose the records listed in Section 1 of Attachment B, for the account(s) listed in Attachment A.

45) Generally, the ECSP copies the contents of the account as the ECSP finds it at the time of service of the search warrant (unless a preservation letter was sent earlier). In this regard, the information provided to law enforcement is only the information currently stored or maintained in the account – **it may not, and likely is not, the entire account containing every email since the account's creation**.

46) Information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This

"user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time.

47)   Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner.

48)   Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). Stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

49)   Finally, because the account itself is being used to facilitate the crimes described herein, I believe that the account as it is currently found may be seized for examination as an instrumentality of the crime, similar to a computer.

## CONCLUSION

50)     Based on the aforementioned factual information, I submit that this affidavit supports
probable cause for a search warrant authorizing the examination of the GOOGLE account
described in Attachment A to seek the items described in Attachment B.  Your affiant
respectfully submits that there is probable cause to believe that evidence of criminal
offenses, namely, violations of 18 U.S.C. § 1591, is located in the GOOGLE account
described above, and this evidence, listed in Attachment B to this affidavit, which is
incorporated herein by reference, is contraband, the fruits of crime, or things otherwise
criminally possessed, or property which is or has been used as the means of committing
the foregoing offenses.


_____

Cameron M. Heath, Jr.
Special Agent
Federal Bureau of Investigation

Sworn to before me this 11th day of October, 2017.

_____

HONORABLE KENNETH G. GALE
United States Magistrate Judge
District of Kansas

## **ATTACHMENT A**

## **(Property/Premises to be Searched)**

This warrant applies to information associated with the following account:

biggc2300@gmail.com

that is stored at premises owned, maintained, controlled, or operated by GOOGLE Inc., an e-mail

provider headquartered at 1600 Amphitheatre Parkway Mountain View, CA  94043

## ATTACHMENT B
### (Property to be Seized)

1.   **Information to be disclosed by Google Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google Inc., including any e-mails, records, files, logs, or information that have been deleted but are still available to Google Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.   The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b.   All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.   All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

d.   All records pertaining to communications between Google Inc. and any person regarding the account, including contacts with support services and records of actions taken.

2.   **Information to be seized by the government**

All information described above in Section 1 that constitutes:

a.   Fruits, evidence and instrumentalities of violation(s) of Title 18 U.S.C. § 1591, relating to sex trafficking of a minor;

b.  Evidence of the identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s), including but not limited to subscriber information, IP logs, address books, friend-lists or buddy-lists, headers, salutations, and content referencing the user or other identifier information (such as credit card numbers, receipts, phone numbers, physical addresses, or photographs);

c.  Evidence indicating how and when the Google account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime (s) under investigation and to the Google account owner;

d.  Evidence indicating the Google account owner's state of mind as it relates to the crime(s) under investigation;

e.  Data and/or content to, from, or about the following entities or individuals: BACKPAGE, FACEBOOK, JOHNELL CARTER aka "Gotti", JAZMIN MANUEL, and the individual known to law enforcement but identified in the affidavit as MINOR VICTIM.